ROBERT HAYNE TARRANT, INC., v. MAX BARNETT FURNITURE CO., INC.

———

(May 25, 1931. Opinion and Decree.)
(June 8, 1931. Rehearing Refused.)

———

Arthur B. Leopold, of New Orleans, attorney for plaintiff, appellee.

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff instituted this suit to recover the sum of $200 alleged to be due under a written contract for advertising. The defense is that the employee of the defendant was without authority to sign the contract and bind defendant.

There was judgment in favor of plaintiff as prayed for, and defendant has appealed.

The contract sued upon reads as follows:

"R. H. Tarrant. New Orleans, Nov. 15/29
"You are hereby authorized to insert advertisement of Max Barnett Furniture Co. in programs of Season 1929/1930 to occupy space of whole page for which we agree to pay the sum of Forty 00/100 Dollars, for each attraction payable immediately after each publication.
"(Signed) Barnett Furniture Co.
$————.                        Patterson."

It is conceded that defendant's employee signed the agreement and that plaintiff inserted certain advertisements in programs covering certain musical concerts held in this city on the following dates: December 5, 1929; January 17, 1930; January 30, 1930; April 7, 1930; and April 20, 1930.

The sole witness for plaintiff was Robert Hayne Tarrant, who testified that he went to defendant's place of business and saw Mr. Patterson, whom he considered and knew as advertising manager, and requested that he sign the above contract, which he did; that after each insertion of the advertisement an invoice together with a copy of the program containing the advertisement was sent to defendant.

The evidence of defendant consisted of the testimony of the president, vice-president, bookkeeper, and other employees of defendant. This evidence shows that Barnett Furniture Company is a retail furniture dealer on a large scale in this city and advertises extensively. Mr. Patterson was employed by defendant in the capacity of an "ad writer and director of art work" or "ad man." His duties consisted of writing copies of the advertisements and directing the art work. The several departments of Barnett Furniture Company furnished information with reference to advertisements of their respective departments, and, after the ads were written and the art work compiled by Patterson, the whole matter was submitted to Max Barnett, president, in order that it might be determined if the advertisement was desirable and how much it would cost, and, if found satisfactory, Max Barnett would sign a contract covering same. The evidence clearly establishes that Mr. Patterson was not directly or indirectly authorized to sign such contracts.

But counsel for plaintiff strenuously argues that defendant is estopped to deny the authority of the agent who signed the contract because it knew or should have known that the contract had been signed and that the advertisements were being run in accordance therewith, and consequently, having accepted the benefit of plaintiff's advertising, defendant ratified its agent's act.

On this issue we observe that Mr. Tarrant testified that he left a copy of the contract with Mr. Patterson, and that he mailed a bill after each concert, together with a copy of the program, to defendant. Defendant's bookkeeper testified that all mail coming into defendant's place of business is placed on his desk and assorted by a young lady, and that these bills were never received. Both the president and

vice-president general manager testified that they had never heard of the contract and had no knowledge whatsoever of the advertisements being run; that their first information as to the contract and ads was on April 21, 1931, when defendant received an invoice in the sum of $200 and copy of the last program of April 20. Max Barnett, president, immediately wrote plaintiff a letter denying that defendant had ordered such advertisements and declining to pay the bill. Defendant further showed that while "ad men" or "ad writers," such as Patterson was, are regarded as advertising managers, newspaper advertising men do not regard such parties as authorized to sign contracts. The record also shows that on a former occasion Mr. Tarrant had spoken to Max Barnett about advertising "stunts," but that Mr. Barnett had declined to enter into such a proposition. This would indicate to our mind that, while Mr. Tarrant regarded Mr. Patterson as the advertising manager, at the same time he appreciated the fact that the company, in order to bind itself to a contract, would have to appear through one of its officers.

A further significant fact is that the advertisement which was published in the programs was for the sale of certain articles and instruments, the agency of which defendant had given up several months prior to the date of the signing of the alleged contract. Therefore the advertising was worthless, because, even if some one were attracted by it and called to purchase the merchandise, defendant would not have been in a position to have sold it to them.

Mr. Patterson died after the suit was filed, but unfortunately his testimony was not taken. This circumstance, together with the fact that he remained in the employ of defendant until his death, some time before the case was tried, does not in our opinion outweigh the positive testimony of defendant's witnesses that Mr. Patterson was not authorized expressly or impliedly to sign the company's name to the contract, that Patterson was not held out as having such authority, and that they did not know that he had done so until after all the advertisements were run and the company had been billed for it.

The rule as to retention of benefits by the principal in order to bind him for the unauthorized act of his agent is announced in the case of Succession of Gilmore, 154 La. 105, 97 So. 330, 331, as follows:

"An unauthorized contract of an agent is ratified by the principal, who, when notified of such contract, does not immediately repudiate it, but accepts the benefit arising under such contract. Ward v. Warfield, 3 La. Ann. 468; Flower v. Downs, 6 La. Ann. 540; Szymanski v. Plassan, 20 La. Ann. 92, 96 Am. Dec. 382; Mangum v. Bell, 20 La. Ann. 215; R. C. C. art. 3010."

In the instant case, defendant, upon learning of Patterson's action, immediately notified plaintiff that Patterson was without authority to sign the company's name and bind it.

We are unable to agree with our learned brother below that defendant was estopped to deny that its employee was unauthorized to sign the contract or that it ratified and approved his action.

For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of defendant, dismissing plaintiff's suit at its cost.